**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                                                    No. CR 23-0654 JB

SHELDON DAYE,

     Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on Defendant Sheldon Daye's Objections to Presentence Report, filed February 3, 2025 (Doc. 58)("Objections"). The Court held a sentencing on March 5, 2025, and March 6, 2025. <u>See</u> Minute Order, filed February 10, 2025 (Doc. 60); Notice of Sentencing Hearing, filed March 5, 2025 (Doc. 69). The primary issues are: (i) whether the Court should overrule Daye's Objections regarding the United States Probation Office's Presentence Investigation Report ¶ 21, at 7, filed December 20, 2025 (Doc. 54)("PSR"), which states that Daye declined to provide his version of the offense, where the United States defers to the United States Probation Office (USPO) on this issue, and the USPO agrees to add Daye's requested information to paragraph 21; and (ii) whether the PSR correctly applies a 2-level enhancement under U.S.S.G. § 3C1.1 ("Obstruction Enhancement") for obstruction of justice because the United States has shown -- by a preponderance of the evidence -- that Daye fled a crime scene, hammered out dents in a truck to conceal his involvement in a lethal hit-and-run accident, and lied to law enforcement about key facts related to the incident. Having reviewed carefully the parties' arguments, relevant law, and applicable facts, the Court concludes that: (i) the Court sustains Daye's Objections regarding PSR ¶ 21, and the USPO agrees to add Daye's requested information regarding PSR ¶ 21; and (ii) the PSR applies correctly the 2-level Obstruction Enhancement, because Plaintiff United States of America has shown -- by a preponderance of the evidence -- that Daye attempted to destroy material evidence. The Court thus sustains in part and overrules in part Daye's Objections. The applicable offense level is 23, the applicable criminal history category is I, and the United States Sentencing Guidelines establish an imprisonment range of 46 to 57 months.

<u>**FACTUAL BACKGROUND**</u>

Daye does not object to the PSR's facts outside of: (i) ¶¶ 21, at 7; and (ii) the PSR's allegations that he fled the crime scene and attempted to hammer out dents in the car with which

he committed a lethal hit-and-run.  See Objections at 2-4, Defendant Sheldon Daye's Reply To

The United States' Response To His Objections To Presentence Report at 2, filed February 25,

2025 (Doc. 62)("Objections Reply").  The Court thus concludes that those undisputed facts are the

Court's findings of fact.  See Federal R. Crim. P. 32(i)(3)(A) ("[The court] may accept any

undisputed portion of the presentence report as a finding of fact.").  On October 2, 2022, Daye

"was intoxicated and recklessly operating a vehicle on New Mexico Highway 602 when he struck

another vehicle on the side of the road, as well as two victims, John Doe and Jane Doe, killing

them."  PSR ¶ 20, at 7.  After striking John and Jane Doe, Daye drove back to his house without

rendering aid.  See PSR ¶ 20, at 7.[1]  On October 17, 2022, law enforcement officers receive an

anonymous tip that Daye committed the October 2, 2022, hit-and-run.  See PSR ¶ 12, at 5.  The

tipster also says that Daye has been attempting to knock dents out of the truck he was driving when

he struck John and Jane Doe.  See PSR ¶ 12, at 5.

On October 19, 2022, investigators locate a heavily damaged truck parked in front of

Daye's residence.  See PSR ¶ 13, at 5.  When investigators speak with Daye about the hit-and-run,

Daye tells them that: (i) he was not driving the damaged truck on October 2, 2022, because he does

not have a driver's license, and (ii) the truck got damaged from hauling wood.  See PSR ¶ 13, at

5.  On October 20, 2022, the truck's owner -- Daye's cousin -- brings the truck to the Crownpoint

Police Department in Crownpoint, New Mexico, and officers discover a dent remover suction cup

tool in the truck's bed.  See PSR ¶ 14, at 6.  On October 26, 2022, investigators speak to Daye for

a second time.  See PSR ¶ 15, at 6.  During this interview, Daye first says that he does not know

who was driving the truck when it was damaged.  See PSR ¶ 15, at 6.  Daye then changes his story

and says that, on October 2, 2022, he picked up his friend in the truck and then had his friend drive

the truck, because Daye was drunk.  See PSR ¶ 15, at 6.  Daye then says that his friend, who also

---

[1]Although Daye "does not admit to the[] veracity" of the PSR's statements regarding his flight, the Court concludes that the United States has shown -- by a preponderance of the evidence -- that Daye fled the scene without rendering aid.  When resolving factual objections, the court must determine whether the United States has met its burden of proving disputed facts by a preponderance of the evidence.  See United States v. Munoz-Tello, 531 F.3d 1174 (10th Cir. 2008). "[S]entencing courts may consider hearsay evidence provided that the evidence has sufficient indicia of reliability."  United States v. Dazey, 403 F.3d 1147, 1177 n.7 (10th Cir. 2005).  "This is not a high standard, for it requires only 'minimal indicia of reliability.'"  United States v. Ayon, 226 F. App'x 834, 840 (10th Cir. 2007)(quoting United States v. Fennell, 65 F.3d 812, 813 (10th Cir. 1995)).  The United States introduces evidence to prove that Daye fled the scene: one witness, a minor who was in the struck vehicle on October 2, 2022, says that, after a vehicle hit John Doe and Jane Doe, the vehicle pulled over momentarily and then drove away.  See PSR ¶ 9, at 5.  Daye introduces no evidence whether he fled the scene.  Accordingly, the Court concludes that the United States has shown -- by a preponderance of the evidence -- that Daye fled the scene.

was drunk, damaged the vehicle when he hit a guardrail.  See PSR ¶ 15, at 6.  The same day, Daye's cousin tells investigators that, the day after the hit-and-run, Daye told his cousin that Daye had hit a guardrail and a trailer the prior night.  See PSR ¶ 16, at 6.  Daye's cousin says that, a week later, Daye and he learn that two people died in the incident.  See PSR ¶ 16, at 6.  Daye's cousin says that Daye and he then agree to pin the hit-and-run on Daye's friend by fabricating a story about Daye's friend driving the truck on October 2, 2022.  See PSR ¶ 16, at 6.

**PROCEDURAL BACKGROUND**

On May 9, 2023, the federal grand jury indicts Daye for "unlawfully kill[ing] John Doe and Jane Doe by operating a motor vehicle without due caution and circumspection and with a wanton and reckless disregard for human life when he knew and should have known that his conduct imperiled the lives of others," in violation of 18 U.S.C. §§ 1153, 1112.  On May 11, 2023, law enforcement officers arrest Daye.  See PSR ¶ 18, at 7.  During his post-arrest interview, Daye admits to committing the October 2, 2022, hit-and-run.  See PSR ¶ 18, at 7.  Daye also admits to lying to law enforcement officers about his involvement in the incident, because he was scared. See PSR ¶ 18, at 7.

On December 20, 2024, the USPO files the PSR, which applies a 2-level Obstruction Enhancement.  See PSR ¶¶ 47, at 11.  On February 3, 2025, Daye files the Objections, which raises two objections to the PSR.  See Objections at 1-2.  Daye's first objection is that PSR ¶ 21, at 7 -- which states that Daye declined to provide his version of the offense on December 2, 2024 -- is incorrect, because, at a plea hearing on December 2, 2024, Daye's counsel advises the USPO that Daye adopts the version that his counsel provides at the hearing.  See Objections at 1.  Daye's second objection is that the USPO applies improperly the Objection Enhancement.  See Objections at 2.  Daye notes that the Obstruction Enhancement Application Notes provide a non-exhaustive list of conduct to which the Obstruction Enhancement applies.  See Objections at 2.  Daye asserts that the only listed conduct that may apply is Application Note 4(G): "'providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense.'"  Objections at 1 (quoting U.S.S.G. § 3C1.1 Application Note 4(G) ("Application Note 4(G)")).  Daye argues that Application Note 4(G) does not apply here, because Daye's initial statements to law enforcement officers do not obstruct or impede significantly their investigation.  See Objections at 2.  Daye also argues that Application Note 5, which identifies conduct to which the Obstruction Enhancement does not apply, counsels

against using the Obstruction Enhancement. See Objections at 2. Daye points to Application Note 5(B), which says that the Obstruction Enhancement does not apply to "making false statements, not under oath, to law enforcement officers, unless Application Note 4(G) above applies." U.S.S.G. § 3C1.1 Application Note 5(B) ("Application Note 5(B)"). Additionally, Daye argues that Application Note 2 -- "Limitations of Applicability of Adjustment," U.S.S.G. § 3C1.1 Application Note 2 ("Application Note 2") -- counsels against using the Obstruction Enhancement. See Objections at 2. Application Note 2 says that the Obstruction Enhancement does not apply to a defendant's unsworn denial of guilt. See General Limitations Application Note.

On February 10, 2025, the United States responds to the Objections. See United States' Response to Defendant Sheldon Daye's Objections to Presentence Report at 4, filed February 10, 2025 (Doc. 59)("Objections Response"). Regarding Daye's first objection -- challenging PSR ¶ 21's accuracy -- the United States "defers to the Court and the Probation Office." Objections Response at 1. Regarding Daye's second objection -- challenging the Obstruction Enhancement's applicability -- the United States makes two arguments, and asks the Court to apply the Obstruction Enhancement. See Objections Response at 3-4. First, the United States argues that "[d]riving away from the scene after killing two people and then proceeding to hammer out the dents caused by the collision on his heavily damaged truck can be more concisely charactering [sic] as destruction of evidence material to the investigation as contemplated by §3C1.1 note 4(D)." Objections Response at 3. Application Note 4(D) says that the Obstruction Enhancement applies to

> destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so; however, if such conduct occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it results in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender

U.S.S.G. § 3C1.1 Application Note 4(D) ("Application Note 4(D)"). Second, the United States argues that Application Note 4(G) describes Daye's conduct, because his "repeat false stories to throw law enforcement off the tracks . . . significantly impaired the investigation by drawing suspicions away from the perpetrator of the crimes and requiring manifest effort in disproving the Defendant's various cooked-up stories." Objections Response at 3. On this point, the United States asserts that Daye's false statements were material and impeded the investigation, even

though the investigation ultimately was successful.  <u>See</u> Objections Response at 3-4 (citing <u>United States v. Flores-Flores</u>, 5 F.3d 1365, 1368 (10th Cir. 1993)).

On February 24, 2025, the USPO responds to the Objections.  <u>See</u> Addendum to the Presentence Report at 1, filed February 24, 2025 (Doc. 61)("PSR Addendum").  Regarding Daye's ¶ 21 objection, the USPO agrees to add Daye's defense counsel's articulated version of events - - to the PSR, because "this objection does not impact the offense level calculation."  PSR Addendum at 1.  Regarding the Obstruction Enhancement objection, the USPO maintains that the enhancement applies for two reasons.  <u>See</u> PSR Addendum at 2-3.  First, the USPO asserts that Daye's attempts to fix the dents in his cousin's truck fit under Application Note 4(D).  <u>See</u> PSR Addendum at 2.  Second, the USPO asserts that Daye's false statements to law enforcement, including his fabricated story about his friend driving the truck, "significantly obstructed and impeded the investigation of the case."  PSR Addendum at 2-3.

On February 25, 2025, Daye replies to the United States' Objections Response.  <u>See</u> Objections Reply at 1.  First, Daye argues that Daye's false statements to law enforcement do not fit under Application Note 4(G), because the United States provides "no specific facts" to support the allegation that Daye's false statements significant impeded the investigation.  Objections Reply at 2.  Daye also asserts that the United States does not provide specific facts "as to <u>how</u> Mr. Daye's conduct significantly impeded the investigation."  Objections Reply at 2 (emphasis in Objections Reply).  Second, Daye addresses the United States' arguments regarding Daye's flight and his attempts to remove the truck's dents.  <u>See</u> Objections Reply at 2.  As an initial matter on this issue, Daye disputes that he fled the scene or attempted to remove the truck's dents.  <u>See</u> Objections Reply at 2.  Although Daye insists that he has not admitted to this conduct, he neither denies it, nor introduces evidence suggesting otherwise: "None of this is conduct to which Mr. Daye admits now nor admitted in his guilty plea. Mr. Daye did not object to their inclusion in the PSR as they were part of the reports provided to probation by the government, but he does not admit to their veracity."  Objections Reply at 2.  Daye also argues that hammering out dents in the truck does not fit under Application Note 4(D), because the United States has not provided "as to how this activity resulted in a 'a material hinderance to the official investigation or prosecution of the instant offense.'"  Objections Reply at 2 (quoting Application Note 4(D)).

## LAW REGARDING OBJECTIONS TO A PRESENTENCE REPORT

Before the Court imposes a sentence, the USPO "must conduct a presentence investigation and submit a report to the court . . . ." Fed. R. Crim. P. 32(c)(1). A PSR must apply the advisory sentencing Guideline, meaning that it must:

(A) identify all applicable guidelines and policy statements of the Sentencing Commission;

(B) calculate the defendant's offense level and criminal history category;

(C) state the resulting sentencing range and kinds of sentences available;

(D) identify any factor relevant to:

    (i) the appropriate kind of sentence, or

    (ii) the appropriate sentence within the applicable sentencing range; and

    (iii) identify any basis for departing from the applicable sentencing range.

Fed. R. Crim. P. 32(d)(1). A presentence report also must provide additional information, including:

(A) the defendant's history and characteristics, including:

    (i) any prior criminal record;

    (ii) the defendant's financial condition; and

    (iii) any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment;

(B) information that assesses any financial, social, psychological, and medical impact on any victim;

(C) when appropriate, the nature and extent of nonprison programs and resources available to the defendant;

(D) when the law provides for restitution, information sufficient for a restitution order;

(E) if the court orders a study under 18 U.S.C. § 3552 (b), any resulting report and recommendation;

(F) a statement of whether the government seeks forfeiture under Rule 32.2 and any other law; and

(G) any other information that the court requires, including information relevant to the factors under 18 U.S.C. § 3553(a).

Fed. R. Crim. P. 32(d)(2).

After the USPO files a PSR, the parties have an opportunity to object to the report. See Fed. R. Crim. P. 32(f). Parties must make their objections in writing within fourteen days of receiving the PSR. See Fed. R. Crim. P. 32(f)(1). Parties may object to many aspects of the PSR,

"including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." Fed. R. Crim. P. 32(f)(1). For example, a party can object to a PSR's statement of facts. See, e.g., United States v. Garcia, No. CR 20-1370 KWR, 2022 WL 2341670 (D.N.M. June 29, 2022)(Riggs, J.)(sustaining in part and overruling in part a defendant's objections that a PSR misstates material facts regarding the posted speed limit and the circumstances surrounding the victim's injuries). If a party raises a factual objection, it must present "information to cast doubt on" the PSR's recitation of the facts. See United States v. Yates, 22 F.3d 981, 989 (10th Cir. 1994). A party also can object that the USPO miscalculates a defendant's criminal history category. See, e.g., United States v. Chavez, No. CR 18-0836 JB, 2018 WL 6621283 (D.N.M. December 18, 2018)(Browning, J.)(addressing a defendant's objections that the Court should reduce his criminal history score by several points). Similarly, a party can object that a PSR impermissibly applies a base-offense-level enhancement, see, e.g., United States v. Casias-Grove, No. 22-0109 JB, 2022 WL 17830249 (D.N.M. December 21, 2022)(Browning, J.)(sustaining a defendant's objection that the PSR impermissibly applies a 4-level enhancement to his base-offense-level); that the PSR should have applied an additional base-offense-level enhancement, see, e.g., United States v. Talk, No. CR 19-1994 JB, 2021 WL 1978624 (D.N.M. May 18, 2021)(Browning, J.)(sustaining the United States' objection that the PSR should have applied a 4-level enhancement to the defendant's base offense level); or that the PSR should have applied a base offense level decrease, see, e.g., United States v. Pena, Nos. CR 19-3609 JB, CR 19-3611 JB, 2022 WL 16924000 (D.N.M. November 13, 2022)(Browning, J.)(sustaining the parties' objections that the PSR should have applied a 2-level reduction to the defendant's base offense level).

Ideally, the parties and the USPO can work through objections without the Court's assistance. Rule 32(f)(3) establishes: "After receiving objections, the probation officer may meet with the parties to discuss the objections. The probation officer may then investigate further and revise the presentence report as appropriate." Fed. R. Civ. P. 32(f)(3). In keeping with rule 32(f)(3), long ago in the District of New Mexico, the Court, the United States Attorney's Office, and the Federal Public Defender's Office agreed that, if there are objections, counsel first will talk to the USPO and see if they can work to address the objections independently. If the parties and the USPO cannot work out an objection, then the parties may file an objection with the Court. If the parties and the USPO cannot resolve an objection, rule 32(g) establishes that, "[a]t least 7 days

before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them." Fed. R. Crim. P. 32(g).

If the parties and the USPO cannot resolve an objection on their own, the Court "must . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). When resolving factual objections, the court must determine whether the United States has met its burden of proving disputed facts by a preponderance of the evidence. See United States v. Munoz-Tello, 531 F.3d 1174 (10th Cir. 2008). Similarly, in considering objections to enhancements to a defendant's criminal history category or base offense level, the court must determine whether the United States has met its burden of showing that a particular enhancement applies by a preponderance of the evidence.[2] See United States v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1315 (D.N.M. 2014)(Browning, J.). The Court may base its conclusion "on evidence presented at trial, undisputed statements in the PSR, and evidence presented at the sentenc[ing] hearing." United States v. Garcia, 2022 WL 2341670, at *2 (quoting United States v. White, 663 F.3d 1207, 1216 (11th Cir. 2011)).

**LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES**

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court of the United States reaffirms the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481 (emphasis in original). The Supreme Court cautions, however, that the Constitution of the United States of America limits this discretion and that the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborates on its holding in Apprendi v. New Jersey, stating that the "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. at

---

[2]There is some nuance regarding the applicable burden of proof required for sentencing enhancements, which the Court discusses in greater detail in the next section.

303 (emphasis in original)(first citing <u>Ring v. Arizona</u>, 536 U.S. 584, 602 (2002); and then citing <u>Harris v. United States</u>, 536 U.S. 545, 563 (2002)(plurality opinion), <u>overruled by</u> <u>Alleyne v. United States</u>, 570 U.S. 99 (2012)).  In <u>United States v. Booker</u>, however, the Supreme Court holds that, because the sentencing guideline ranges are no longer mandatory, "<u>Apprendi</u> does not apply to the present advisory-Guidelines regime."  <u>United States v. Ray</u>, 704 F.3d 1307, 1314 (10th Cir. 2013)(citing <u>United States v. Booker</u>, 543 U.S. at 259).  <u>See</u> <u>United States v. Booker</u>, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes 'the relevant sentencing rules . . . mandatory and impose[s] binding requirements on all sentencing judges' -- the statute falls outside the scope of <u>Apprendi</u>'s requirement."  (quoting <u>United States v. Booker</u>, 543 U.S. at 221)(<u>United States v. Booker</u> adds second alteration)).  More recently, the Supreme Court holds that the <u>Apprendi v. New Jersey</u> requirements apply to facts that increase a defendant's mandatory minimum sentence.  <u>See</u> <u>Alleyne v. United States</u>, 570 U.S. at 103.

In <u>United States v. Magallanez</u>, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit holds that <u>Blakely v. Washington</u> and <u>United States v. Booker</u> do not change the district court's enhancement findings analysis.  <u>See</u> <u>United States v. Magallanez</u>, 408 F.3d at 684-85.  <u>United States v. Magallanez</u> involves plain-error review of a drug sentence in which a jury finds the defendant guilty of conspiracy to possess with intent to distribute and conspiracy to distribute methamphetamine.  <u>See</u> 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributes to the defendant 50 to 500 grams of methamphetamine; at sentencing, however, the judge -- based on the testimony of the United States' witnesses about the various amounts that they had sold to the defendant -- attributes 1,200 grams of methamphetamine to the defendant and uses that amount to calculate his sentence under the Guidelines.  <u>See</u> <u>United States v. Magallanez</u>, 408 F.3d at 682.  The district court's findings increase the defendant's Guidelines sentencing range from 63 to 78 months, based on the jury's 50 grams amount, to 121 to 151 months, based on the judge's 1,200 grams amount.  <u>See</u> <u>United States v. Magallanez</u>, 408 F.3d at 682-83.  On appeal, the Tenth Circuit states that, both before and after Congress' passage of the "Sentencing Reform Act, sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict."  <u>United States v. Magallanez</u>, 408 F.3d at 684.  Although <u>United States v. Booker</u> makes the Guidelines ranges "effectively advisory," <u>United States v. Booker</u>, 543 U.S. at 245, the Tenth Circuit reaffirms that "district courts are still required to consider Guideline ranges, which are

determined through application of the preponderance standard, just as they were before." <u>United States v. Magallanez</u>, 408 F.3d at 685.

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." <u>United States v. Olsen</u>, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting <u>United States v. Washington</u>, 11 F.3d 1510, 1516 (10th Cir. 1993)).[3] "[T]he application of an enhancement . . . does not implicate the Supreme Court's holding in <u>Apprendi v. New Jersey</u>." <u>United States v. Reyes-Vencomo</u>, No. CR 11-2563 JB, 2012 WL 2574810, at *7 (D.N.M. June 26, 2012)(Browning, J.). The Tenth Circuit applies <u>Apprendi v. New Jersey</u>'s requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." <u>United States v. Price</u>, 400 F.3d 844, 847 (10th Cir. 2005). <u>Accord</u> <u>United States v. Ray</u>, 704 F.3d at 1314. A defendant may assert an error under <u>Apprendi v. New Jersey</u> only where the fact at issue increases his or her sentence beyond the statutory maximum. <u>See</u> <u>United States v. O'Flanagan</u>, 339 F.3d 1229, 1232 n.2 (10th Cir. 2003)(holding that a defendant

---

[3]Although the Tenth Circuit states in <u>United States v. Washington</u> that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit since characterizes its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," <u>United States v. Ray</u>, 704 F.3d at 1314 (quoting <u>United States v. Olsen</u>, 519 F.3d at 1105). <u>See</u> <u>United States v. Olsen</u>, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting <u>United States v. Washington</u>, 11 F.3d at 1516)). The Tenth Circuit has not found yet that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence. <u>United States v. Olsen</u>, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is necessary to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement does not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). <u>See</u> <u>United States v. Constantine</u>, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); <u>United States v. Valdez</u>, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitles the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); <u>United States v. Washington</u>, 11 F.3d at 1516 (concluding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributes, even though its findings increase the defendant's sentence from twenty years to consecutive forty-year terms). Subsequent to <u>United States v. Washington</u>, the Tenth Circuit reiterates the position that preponderance of the evidence is the proper standard, stating: "The Supreme Court has not adopted a heightened standard of proof at sentencing for contested facts, thus we hold that the correct standard of proof in this case was a preponderance of the evidence. This issue has been foreclosed in this Circuit." <u>United States v. Robertson</u>, 946 F.3d 1168, 1171 (10th Cir. 2020)(citing <u>United States v. Constantine</u>, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)).

could not assert an error under <u>Apprendi v. New Jersey</u>, because "his sentence does not exceed the statutory maximum"); <u>United States v. Hendrickson</u>, 592 F. App'x 699, 705 (10th Cir. 2014)(unpublished)(holding that, after <u>Alleyne v. United States</u>, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").[4]    The Court has noted:

> [A]lthough the decision of the Supreme Court of the United States in <u>Alleyne v. United States</u> . . . expands the rule from <u>Apprendi v. New Jersey</u>, . . . (holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence.  <u>See</u> [<u>United States v. Sangiovanni</u>, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26 [(D.N.M. August 29, 2014)(Browning, J.)].

<u>United States v. Cervantes-Chavez</u>, 59 F. Supp. 3d at 1315.  The Supreme Court has clarified that "[b]oth the 'floor' and 'ceiling' of a sentencing range 'define the legally prescribed penalty.' . . . And under our Constitution, when 'a finding of fact alters the legally prescribed punishment so as to aggravate it,' that finding must be made by a jury of the defendant's peers beyond a reasonable doubt."  <u>United States v. Haymond</u>, 588 U.S. 634, 645 (2019)(quoting <u>Alleyne v. United States</u>, 570 U.S. at 112-14).  Further, the Tenth Circuit has determined that a district court can use its own finding on drug quantity to enhance a defendant's Guidelines range consistent with <u>Alleyne v. United States</u>, "so long as the court does not use its own drug quantity finding to alter the defendant's <u>statutory</u> sentencing range."  <u>United States v. Cassius</u>, 777 F.3d 1093, 1094 (10th Cir. 2015)(emphasis in original).

---

[4]<u>United States v. Hendrickson</u>, 592 F. App'x 699 (10th Cir. 2014), is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  <u>See</u> 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that <u>United States v. Hendrickson</u>, <u>United States v. Brown</u>, 288 F. App'x 518, 526 (10th Cir. 2008), <u>United States v. Anderson</u>, 674 F. App'x 799, 800 (10th Cir. 2017), <u>United States v. Hill</u>, 568 F. App'x 549, 555 (10th Cir. 2014), <u>United States v. Hopkins</u>, 509 F. App'x 765, 780-84 (10th Cir. 2013), <u>United States v. Dazey</u>, 242 F. App'x 563, 570-71 (10th Cir. 2007), <u>United States v. Myrick</u>, 94 F. App'x 804, 807 (10th Cir. 2004), and <u>United States v. Ayon</u>, 226 F. App'x 834, 840 (10th Cir. 2007), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

## LAW REGARDING U.S.S.G § 3C1.1

U.S.S.G. § 3C1.1 states:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.  The application notes state: "Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction."  U.S.S.G. § 3C1.1, Application Note 1.

The application notes to § 3C1.1 provide a non-exhaustive list of conduct that warrants the upward adjustment.  See U.S.S.G. § 3C1.1, Application Note 4.

> **4.    Examples of Covered Conduct. --** The following is a non-exhaustive list of examples of the types of conduct to which this enhancement applies:
>
> **(A)**    threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so;
>
> **(B)**    committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction;
>
> **(C)**    producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding;
>
> **(D)**    destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so . . .
>
> **(E)**    escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding;
>
> **(F)**    providing materially false information to a judge or magistrate judge;
>
> **(G)**    providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense;
>
> **(H)**    providing materially false information to a probation officer in respect to a presentence or other investigation for the court;

**(I)**    other conduct prohibited by obstruction of justice provisions under Title 18, United States Code (e.g., 18 U.S.C. §§ 1510, 1511);

**(J)**    failing to comply with a restraining order or injunction issued pursuant to 21 U.S.C. 853(e) or with an order to repatriate property issued pursuant to 21 U.S.C. 853(p);

**(K)**    threatening the victim of the offense in an attempt to prevent the victim from reporting the conduct constituting the offense of conviction.

U.S.S.G. § 3C1.1 Application Note 4 (bold in the original).

The application note also lists a number of acts that do not normally trigger the enhancement.

**5.    Examples of Conduct Ordinarily Not Covered.** -- Some types of conduct ordinarily do not warrant application of this adjustment, but may warrant a greater sentence within the otherwise applicable guideline range or affect the determination of whether other guideline adjustments apply (e.g., § 3E1.1 (Acceptance of Responsibility)). . . .

The following is a non-exhaustive list of examples of the types of conduct to which this application note applies:

**(A)**    providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense;

**(B)**    making false statements, not under oath, to law enforcement officers, unless Application Note 4(G) above applies;

**(C)**    providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation;

**(D)**    avoiding or fleeing from arrest (see, however, § 3C1.2) (Reckless Endangerment During Flight);

**(E)**    lying to a probation or pretrial services officer about defendant's drug use while on pre-trial release, although such conduct may be a factor in determining whether to reduce the defendant's sentence under § 3E1.1 (Acceptance of Responsibility).

U.S.S.G. § 3C1.1 Application Note 5 (bold in the original).

In United States v. Farnsworth, 92 F.3d 1001 (10th Cir. 1996), the Tenth Circuit recognizes that an attempt to influence a witness by instructing the witness to lie warrants an enhancement under § 3C1.1. See United States v. Farnsworth, 92 F.3d at 1011. The Tenth Circuit remands the case to the district court, however, because the district court did not make a specific finding as to the issue, instead doing no more than adopting "the analysis of the Probation Department as accurate and correct." United States v. Farnsworth, 92 F.3d at 1011. In United States v. Yuselew, No. CR 09-1035 JB, 2010 WL 3834418 (D.N.M. Aug. 5, 2010)(Browning, J.), the Court holds

that, "to warrant application of the § 3C1.1 enhancement, the defendant must have deliberately -- not accidentally, incidentally, or mistakenly -- done some act with the specific purpose of thwarting the investigation and prosecution." 2010 WL 3834418, at *12. The Court also concludes that attempts to obstruct justice may be sufficient if the acts are of a kind that likely are to thwart the investigation and eventual prosecution. See 2010 WL 3834418, at *13.

The enhancement applies even for attempted obstruction of justice if the United States demonstrates that the defendant intended to obstruct justice and that the defendant committed an act which constitutes a substantial step toward the obstruction of justice. See United States v. Fleming, 667 F.3d at 1107. Moreover, a "defendant's offense level is enhanced by two levels for attempted obstruction of justice when the Government demonstrates that the defendant: (1) intended to obstruct justice, and (2) committed an act that constitutes a substantial step toward the obstruction of justice." United States v. Fleming, 667 F.3d at 1107 (citing United States v. Washington, 653 F.3d 1251, 1264 (10th Cir. 2011)). "A substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime. . . . Whether a defendant's actions amount to an attempt, and, in particular, whether his actions qualify as a substantial step, is a highly fact-specific inquiry." United States v. Washington, 653 F.3d at 1264.

## ANALYSIS

The Court sustains in part and overrules in part the Objections. First, the Court sustains Daye's PSR ¶ 21, at 7, objection, because: (i) all parties agree that Daye adopts the version of events that his counsel articulates at the December 2, 2024, plea hearing, and (ii) there is no evidence that Daye has not adopted that version of events. See Objections at 1, Objections Response at 1, PSR Addendum at 1. Second, the Court overrules Daye's Obstruction Enhancement objection, because Daye attempted to destroy material evidence. The Court also concludes that the Obstruction Enhancement does not apply to Daye's false statements to law enforcement, because those false statements did not obstruct or impede significantly the investigation.

## I.    THE OBSTRUCTION ENHANCEMENT APPLIES, BECAUSE DAYE ATTEMPTED TO DESTROY MATERIAL EVIDENCE.

The Court concludes that the Obstruction Enhancement applies, because Daye attempted to destroy material evidence. As a threshold issue, the Court concludes that the United States has shown -- by a preponderance of the evidence -- that Daye tried to hammer out some of the dents

in his cousin's truck.  In evaluating factual objections, the Court may consider hearsay evidence, provided that the evidence has a minimal indicium of reliability.  See supra, at 2 n.1.  Two pieces of evidence support the Court's conclusion that Daye attempted to hammer out the dents in his cousin's truck.  First, an anonymous tipster says that she saw Daye and another male "attempting to knock the dents out of the truck."  PSR ¶ 12, at 5.  Second, law enforcement officers discover a dent remover suction cup tool in the truck's bed when Daye's cousin brings the truck in for evaluation.  See PSR ¶ 14, at 6.  Daye introduces no evidence challenging the United States' assertion that he attempted to remove the truck's dents.  Accordingly, the Court concludes that the United States has shown -- by a preponderance of the evidence -- that Daye tried to hammer out some of the dents in his cousin's truck in an attempt to conceal his involvement in the October 2, 2022, hit-and-run.

Turning to whether the Obstruction Enhancement applies here, the Court considers whether Daye's dent-removal attempts constitute an attempt to obstruct the investigation into the October 2, 2022, hit-and-run.  The Obstruction Enhancement states:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

Obstruction Enhancement.  As an initial matter, the Court concludes that part (2) is satisfied, because Daye's dent-removal activity relates to the offense of conviction -- the October 2, 2022, hit-and-run.  Daye has not offered an innocent explanation why he was hammering out the dents in his cousin's truck the day after he hit John and Jane Doe.  Nor can he.  The inference is clear: Daye tries to remove the dents in his cousin's truck to cover up his involvement in the hit-and-run. See United States v. Norman, 129 F.3d 1393, 1399 (10th Cir. 1997)(affirming application of the Obstruction Enhancement to a drug distribution defendant who attempts to bury drugs and drug paraphernalia after a car accident, because he reasonably could anticipate that the drugs would be found during an accident investigation).

Regarding part (1) -- i.e., whether Daye's dent-removal activity constitutes obstructive conduct -- the Court considers whether that activity fits under Application Note 4(D), which applies to

> destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g., shredding a document or destroying ledgers upon learning that an official

investigation has commenced or is about to commence), or attempting to do so; however, if such conduct occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it results in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender

Application Note 4(D). Material evidence is evidence "that, if believed would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 Application Note 6. The damage to Daye's cousin's truck is material evidence, because it tends to show that the truck was involved in the October 2, 2022, hit-and-run. The remaining issue is whether Daye's flight and later attempts to remove the truck's dents are attempts to destroy or conceal the truck's damage. The Court has concluded previously that "courts do not apply U.S.S.G. § 3C1.1 in cases involving flight without other obstructive conduct." United States v. Beckner, No. CR 15-2218 JB, 2023 WL 4157269, at *32 (D.N.M. June 23, 2023)(Browning, J.). Accordingly, Daye's flight, alone, does not warrant applying the Obstruction Enhancement. The Court concludes, however, that Daye's dent-removal activity is an attempt to destroy material evidence. The evidence at issue is the dents themselves -- not the entire truck -- because the dents tend to show that the truck was involved in the October 2, 2022 hit-and-run. Had Daye removed successfully the dents, he would have destroyed the most incriminating physical evidence that his cousin's truck struck and killed John and Jane Doe. Destroying incriminating physical evidence fits within Application Note 4(D) and warrants application of the Obstruction Enhancement. See United States v. Brown, 288 F. App'x 518, 526 (10th Cir. 2008)(affirming application of the Obstruction Enhancement to a felon-in-possession defendant who flushes a bullet down the toilet); United States v. Bedford, 446 F.3d 1320, 1325 (10th Cir. 2006)(affirming application of the Obstruction Enhancement to a drug-possession defendant who swallows a controlled substance); United States v. Mills, 194 F.3d 1108, 1115 (10th Cir. 1999)(affirming application of the Obstruction Enhancement to an assault defendant who erases incriminating portions of a videotape of the assault); United States v. DeLeon, 437 F. Supp. 3d 955, 1017 (D.N.M. 2020)(Browning, J.)(applying the Obstruction Enhancement to murder defendants who burn a murder victim's body); United States v. Bryant, 356 F. Supp. 3d 216, 222 (D. Conn. 2018)(Bryant, J.)(applying the Obstruction Enhancement to a defendant who cleans up a murder scene). Even though Daye does not remove the dents successfully, his hammering is "an act that constitutes a substantial step toward the obstruction of justice," which warrants applying the Obstruction Enhancement. United States v. Fleming, 667 F.3d at 1107. See United States v. Norman, 129 F.3d at 1396 (affirming application of the Obstruction Enhancement to a drug

distribution defendant who partially buries a box of drugs and drug paraphernalia); <u>United States v. Anderson</u>, 674 F. App'x 799, 800 (10th Cir. 2017)(affirming application of the Obstruction Enhancement to a defendant convicted of engaging in the firearms business without a license who tells his girlfriend to hide a firearm after his arrest); <u>United States v. Hill</u>, 568 F. App'x 549, 555 (10th Cir. 2014)(affirming application of the Obstruction Enhancement to a drug distribution conspiracy defendant who offers $5,000 for the murder of an adversarial witness); <u>United States v. Jacks</u>, 961 F.2d 221 (Table), 1992 WL 74169, at *2 & n.1 (10th Cir. 1992)(affirming application of the Obstruction Enhancement to a drug-trafficking defendant whose codefendant attempts to cut down incriminating marijuana plants after the defendant is arrested). Accordingly, the Court concludes that the Obstruction Enhancement applies to Daye's dent-removal conduct.

The Court does not agree with Daye's argument that his attempts to remove the dents do not fit under the Application Note 4(D), because this conduct does not hinder the investigation. <u>See</u> Objections Reply at 2. There are two parts to Application Note 4(D). The first part says that destroying, concealing, or attempting to destroy or conceal, material evidence warrants applying the Obstruction Enhancement. <u>See</u> Application Note 4(D). The second part provides a limited exception to the first part: if the obstructive conduct "occurred contemporaneously with arrest," then the Obstruction Enhancement does not apply, unless the obstructive conduct "resulted in a material hindrance" to the investigation. Application Note 4(D). "Application Note 4(d)'s requirement of 'material hindrance' applies only to conduct occurring contemporaneously with arrest." <u>United States v. Bedford</u>, 446 F.3d at 1326 (internal quotations have no citation). "The term 'contemporaneous' as used in application note 4(d) has been 'construed to encompass obstructive conduct just prior to arrest, as when the police are at the defendant's door.'" <u>United States v. Anderson</u>, 674 F. App'x at 801 (quoting <u>United States v. Norman</u>, 129 F.3d at 1400). "The exception also includes 'conduct admitting a spontaneous or visceral or reflexive response occurring at the point arrest becomes imminent.'" <u>United States v. Anderson</u>, 674 F. App'x at 801-02 (quoting <u>United States v. Bedford</u>, 446 F.3d at 1325). Daye's attempts to hammer out the dents in his cousin's car in the days after the hit-and-run, before law enforcement officers interview him, does not occur immediately before his arrest, or as a "spontaneous or visceral or reflexive response" to imminent arrest. <u>United States v. Bedford</u>, 446 F.3d at 1325. Accordingly, the Court concludes that Daye's conduct does not fall within Application Note 4(D)'s limited exception, and the material hindrance requirement does not apply. <u>See</u> <u>United States v. Anderson</u>, 674 F. App'x

at 802 (concluding that Application Note 4(D)'s limited exception does not apply to a defendant who, after seeing a police vehicle, threw a gun in an alley, retrieved the gun later, and then, after his arrest for armed robbery, told another person to hide the gun for him); United States v. Morris, 573 F. App'x 712, 728 (10th Cir. 2014)(concluding that Application Note 4(D)'s limited exception does not apply to a defendant who, immediately after the IRS searches his home, instructs a client to destroy emails, and is then arrested a year later); United States v. Bedford, 446 F.3d at 1325-26 (concluding that Application Note 4(D)'s limited exception does not apply to a defendant who, after a marked police car initiates a traffic stop, swallows crack cocaine before stopping his vehicle, and, then, later, tries to wipe up his crack-infused vomit at the police station); United States v. Hankins, 127 F.3d 932, 935 (10th Cir. 1997)(concluding that, because a defendant's "conduct two days after his arrest was not 'contemporaneous' within the meaning of the term in § 3C1.1, [] the material hindrance requirement was not [] triggered")(internal quotations have no citation).[5]

## II.    THE OBSTRUCTION ENHANCEMENT DOES NOT APPLY TO DAYE'S FALSE STATEMENTS TO LAW ENFORCEMENT.

The Court concludes that the Obstruction Enhancement does not apply to Daye's false statements to law enforcement, because those statements did not obstruct or impede significantly the investigation. The Obstruction Enhancement applies to "a materially false statement to a law enforcement officers that significantly obstructed or impeded the official investigation or prosecution of the instant offense." Application Note 4(G). If the materially false statement does not obstruct or impede significantly the investigation, then the Obstruction Enhancement does not apply. See Application Note 5(B)(providing that "making false statements, not under oath, to law enforcement officers, unless Application Note 4(G) above applies"). First, the Court evaluates whether Daye made materially false statements to law enforcement officers during the investigation. Second, the Court evaluates whether those materially false statements obstructed or impeded significantly the investigation.

---

[5]In the alternative, if Application Note 4(D)'s limited exception applies, the Court agrees with Daye: because his dent-removal did not hinder materially the investigation, the Obstruction Enhancement would not apply. See PSR ¶ 14, at 6 (indicating that, when Daye's cousin brings the truck to the Crownpoint Police Department in Crownpoint, New Mexico, law enforcement officers observe dents consistent with the October 2, 2022, hit-and-run). Cf. United States v. Bedford, 446 F.3d at 1326 (evaluating material hindrance in the alternative, and concluding that the defendant's swallowing of crack hinders materially an investigation, because he destroyed "some of the most incriminating evidence against him" in a drug case where "sentences are largely determined by the quantity of drugs at stake.").

The Court concludes that Daye made several materially false statements to law enforcement officers during the investigation. Daye has not objected to the PSR's statements describing his false statements. See Objections at 1-2; Objections Reply at 1-3 (describing "the government's allegations of a false alibi and the alleged repeated lies to enforcement," but not denying those allegations or lodging objections to the PSR's facts describing the false statements). Accordingly, the Court has adopted the PSR's facts relating to these false statements as undisputed findings of fact. See supra, at 2-3. The question remains whether these false statements are material. A material statement is a statement "that, if believed would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 Application Note 6. During his first interview, Daye lies to investigators when he says: (i) he was not driving the truck on October 2, 2022; and (ii) the truck got damaged from hauling wood. See PSR ¶ 13, at 5. During his second interview, Daye lies to investigators when he says: (i) he does not know who was driving the truck when it was damaged; and (ii) his friend was driving the truck when it was damaged. See PSR ¶ 15, at 6. These false statements address key issues under investigation: who drove the truck and how it got damaged. All four of these false statements are material, because, "if believed, [they] would tend to influence or affect the issue under determination" -- i.e., the nature and circumstances of the October 22, 2022 hit-and-run. U.S.S.G. § 3C1.1 Application Note 6. See United States v. Fernandez-Barron, 950 F.3d 655, 662-64 (10th Cir. 2019)(concluding that a drug-trafficking defendant's perjurious denial of owning a car that another witness observes picking up drugs is material for the purposes of applying the Obstruction Enhancement); United States v. Selvie, 684 F.3d 679, 683 (7th Cir. 2012)(concluding that a felon-in-possession defendant's instructing his girlfriend to file a false complaint alleging that police officers planted a firearm on him is material for the purposes of applying the Obstruction Enhancement, because "[t]he presence of a gun on his person or in his possession was the crux of the charge against him"); United States v. Allen, 341 F.3d 870, 896-97 (9th Cir. 2003)(concluding that a defendant's perjurious false alibi is material for the purposes of applying the Obstruction Enhancement). Accordingly, the Court concludes that Daye provides multiple materially false statements to law enforcement officers during the investigation.

Next, the Court concludes that Daye's materially false statements did not obstruct or impede significantly the investigation. "Whether the particular facts of a case show that the misinformation offered by the defendant was sufficient to significantly impede an investigation is

a question of fact to be determined by the sentencing court." United States v. Flores-Flores, 5 F.3d 1365, 1368 (10th Cir. 1993). False statements do not obstruct or impede significantly an investigation if the concealed information is readily available elsewhere and the false statements do not cause investigators to waste significant resources. See United States v. Urbanek, 930 F.2d 1512, 1515 (10th Cir. 1991)(reversing application of the Obstruction Enhancement to a tax evasion defendant who tells IRS investigators that he did not use any aliases to avoid paying taxes, where the investigators "already had the correct information in their possession" and the defendant recanted when confronted with the truth). Cf. United States v. Hopkins, 509 F. App'x 765, 780-84 (10th Cir. 2013)(affirming application of the Obstruction Enhancement to a tax evasion defendant who provides to the USPO "material financial misinformation" regarding his trust accounts, "which could affect restitution orders at sentencing"); United States v. John H. Sitting Bear, 436 F.3d 929, 934 (8th Cir. 2006)(affirming application of the Obstruction Enhancement to a second-degree murder defendant who lies initially to investigators about the circumstances of his son's death, where investigators testify that the defendant's eventual admission to swinging his son into a kitchen table "was a significant step forward in the investigation," given that "[p]rior to that time . . . the investigators had no basis for determining which of the two [parents] was responsible for the ultimate act" that killed the son); United States v. Finck, 407 F.3d 908, 914 (8th Cir. 2005)(affirming application of the Obstruction Enhancement, where the defendant's lies cause an eight-day delay in locating a fraudulently-acquired vehicle and force investigators to "expend unnecessary resources" to locate the vehicle).[6] The United States has not identified any way that Daye's false statements impeded their investigation. See Objections Response at 1-4. Although Daye lies to investigators on October 19, 2022, about how the truck got damaged, Daye's cousin brings the truck into the police station the next day. See PSR ¶¶ 13-14, at 5-6. Less than a week

---

[6]Although the United States argues that Daye's false statements obstructed or impeded significantly the investigation, the United States' only cited case on this issue does not persuade the Court to conclude that Daye's false statements warrant applying the Obstruction Enhancement. See Objections Response at 3-4 (citing United States v. Flores-Flores, 5 F.3d 1365, 1368 (10th Cir. 1993)). In United States v. Flores-Flores, an illegal reentry defendant lies to an Immigration and Naturalization Service agent about his true identity and past use of aliases. See 5 F.3d at 1367. Although investigators eventually ascertain the defendant's identity, the Tenth Circuit affirms the district court's application of the Obstruction Enhancement, because "[i]t was necessary for federal investigators to expend considerable effort and resources to fill in and correct the incomplete and misleading information." United States v. Flores-Flores, 5 F.3d at 1369. United States v. Flores-Flores is another example of a court holding that false statements obstruct or impede significantly an investigation when those statements cause investigators to waste significant resources. That holding is not persuasive here, where the United States has not introduced evidence that it wasted significant resources responding to Daye's lies.

later, investigators speak with both Daye and his cousin on the same day.  See PSR ¶¶ 15-16, at 6.

Although Daye lies again about his involvement in the hit-and-run, Daye's cousin tells

investigators that Daye was driving the truck.  See PSR ¶ 16, at 6.  The information about which

Daye lies -- who was driving the truck and how it got damaged -- was readily available to law

enforcement officers when Daye made his false statements.  Moreover, law enforcement officers

obtain that information easily within days.  The United States has not explained how Daye's lies

prevented it from uncovering the truth or caused it to waste resources.  In short, Daye's lies had

little -- if any -- impact on law enforcement's ability to find out who committed the October 2,

2022, hit-and-run.  Accordingly, the Court concludes that Daye's materially false statements did

not obstruct or impede significantly the investigation, and, thus, the Obstruction Enhancement

does not apply to this conduct.[7]

**IT IS ORDERED** that: (i) the Defendant Sheldon Daye's Objections to Presentence

Report, filed February 3, 2025 (Doc. 58), are sustained in part and overruled in part; (ii) the 2-level

§ 3C1.1 enhancement applies; (iii) the applicable offense level is 23; (iv) the applicable criminal

history category is I; and (v) the United States Sentencing Guidelines establish an imprisonment

range of 46 to 57 months.

---

[7]The Court does not agree with Daye's argument that the Obstruction Enhancement does
not apply, because, according to Daye, his false statements are mere denials of guilt.  See
Objections at 2.  Application Note 2 provides: "A defendant's denial of guilt (other than a denial
of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a
probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision."
U.S.S.G. § 3C1.1 Application Note 2.  False statements about specific facts related to the
underlying crime are not denials of guilt.  See United States v. Dazey, 242 F. App'x 563, 570-71
(10th Cir. 2007)(affirming application of the Obstruction Enhancement to an investment fraud
defendant who testifies falsely that he never told investors that he was a trader, because the
defendant's "untruthfulness was not linked solely to his denial of guilt"); United States v. Myrick,
94 F. App'x 804, 807 (10th Cir. 2004)(affirming application of the Obstruction Enhancement to a
drug trafficking defendant who testifies falsely that she did not know that the van she drove
contained over 150 pounds of marijuana); United States v. Davis, 442 F.3d 1003, 1009 (7th Cir.
2006)(affirming application of the Obstruction Enhancement to a tax fraud defendant who lies to
IRS investigators about who prepared her tax returns).  Cf. United States v. Owens, 70 F.3d 1118,
1132 (10th Cir. 1995)(reversing application of the Obstruction Enhancement to a drug distribution
conspiracy defendant who, at trial, "denied his participation" in the underlying conspiracy); United
States v. Pelliere, 57 F.3d 936, 939 (10th Cir. 1995)(reversing application of the Obstruction
Enhancement to a drug distribution defendant who tells falsely an investigator that he never sold
"'any drugs at any time'")(quoting the investigator's testimony); United States v. Yankton, 986
F.2d 1225, 1227-1228 & n.2 (8th Cir. 1993)(affirming district court's decision to not apply the
Obstruction Enhancement to a rape defendant who tells investigators that he did not rape the
victim, because that statement was a "general denial of guilt," where the defendant maintains that
the encounter was consensual and admits at trial that the statement was false only to the extent it
suggests that he and the victim did not have sexual intercourse).  Daye's false statements go beyond
denials of guilt; he lies about who drove the truck and how it got damaged.  See PSR ¶¶ 13-16, at
5-6.  Those lies address specific facts related to the October 2, 2022, hit-and-run.  Accordingly,
the Court concludes that Daye's false statements are not denials of guilt.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

Alex M. M. Uballez
  United States Attorney
Mark A. Probasco
Margaret P. Tomlinson
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      _Attorneys for the Plaintiff_

Sarah M. Gorman
Law Office of Robert D. Gorman, P.A.
Albuquerque, New Mexico

      _Attorneys for the Defendant_